# In the United States Court of Federal Claims

No. 21-1807
(Filed Under Seal: December 17, 2021)
(Reissued: October 11, 2022) [1]

## NOT FOR PUBLICATION

```
*****************************************
XEROX CORPORATION,                  *
                                    *
                   Plaintiff,       *
                                    *
          v.                        *
                                    *
THE UNITED STATES,                  *
                                    *
                   Defendant,       *
                                    *
and                                 *
                                    *
TRIDENT E&P, INC.,                  *
                                    *
                   Defendant-Intervenor.  *
*****************************************
```

*Jonathan S. Aronie*, Sheppard Mullin Richter & Hampton LLP, Washington, DC, counsel for Plaintiff.

*Matthew J. Carhart*, U.S. Department of Justice, Washington, DC, counsel for Defendant.

## OPINION AND ORDER

**DIETZ, Judge.**

Xerox Corporation ("Xerox"), Plaintiff in this post-award bid protest, challenges the award of a contract by the Defense Logistics Agency ("DLA" or the "Agency") to Trident E&P, Inc. ("Trident"). Before the Court is Xerox's motion to supplement the administrative record with intra-agency communications and documents. Because the motion seeks documents that were before the Agency during the decision-making process, the Court treats it as a motion to

---

[1] This Opinion and Order was filed under seal on December 17, 2021, *see* ECF No. 48, in accordance with the Protective Order entered on September 9, 2021, *see* ECF No. 13. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. On January 7, 2022, the parties filed a joint status report in which only Defendant-Intervenor proposed redactions. ECF No. 58. On September 1, 2022, Defendant-Intervenor filed a status report withdrawing its redactions. ECF No. 80. Accordingly, the Court reissues this opinion without any redactions.

complete, rather than supplement, the administrative record. The government does not oppose the inclusion of one email referenced in the administrative record, but Xerox has failed to meet its burden to show that the remainder of the documents it requests are properly part of the record. Accordingly, Xerox's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    BACKGROUND

Though Xerox's post-award bid protest challenges the subject procurement on multiple grounds, the present motion to supplement the administrative record pertains only to one of those grounds—namely, DLA's evaluation of Trident's compliance with the Solicitation's single manufacturer requirement. *See* Memo. in Supp. of Pl.'s Am. Mot. at 3, ECF No. 39-1 [hereinafter Pl.'s Mem.]. The Court limits its recitation of the facts only to those relevant to Xerox's motion to supplement the administrative record.

### A.    Factual Background

In 2019, DLA issued Solicitation No. SP7000-19-R-1001 (the "Solicitation") for the award of a single contract to provide commercial copier machines and similar devices, along with associated technical support and supplies, for use aboard military ships. *See* AR211-12.[2] Following a technical evaluation of the proposals from Xerox and Trident and a reverse auction, Trident was selected for the contract as the Lowest Price Technically Acceptable offeror. AR9029-30.

Among the Solicitation's technical requirements, Performance Work Statement ("PWS") § 21.1.37 stated that "Class I-IVC & Production Devices must be a single manufacturer" (the "single manufacturer requirement"). AR 9127. In response to a vendor's request to consider removing the requirement, DLA stated that "the devices must be a single manufacturer due to the certifications needed for each device placed onboard/ network [*sic*] and the Navy policy of continuity." AR60.

Trident's first proposal, submitted in April 2019, was facially noncompliant with the single manufacturer requirement. *See* AR1492-1732. Trident stated that it had "teamed with Hewlett Packard (HP) and Ricoh USA," AR1501, and, indeed, proposed production devices from both manufacturers. *See* AR1520.

In September 2019, after an amendment to the Solicitation, Trident submitted a revised proposal in which it stated that it was now "teamed with Hewlett Packard (HP) for this requirement," removing the reference to Ricoh USA. AR3919. Confirming compliance with the single manufacturer requirement, Trident further stated, "HP will be providing equipment and support for Class I-IVC devices, Production Color, Production Black and White, and Desktop

---

[2] The government filed the administrative record in two consecutively paginated parts: an initial record, ECF No. 29, and a supplementary record following remand, ECF No. 38. The Court cites to pages in either part of the administrative record as "AR___."

Printers." *Id.* Trident proposed devices with HP model numbers and provided specification sheets for each. *See* AR3940-83. Xerox questions the authenticity of two of these specification sheets, noting that they contain explicit references to devices manufactured by Canon. Pl.'s Mem. at 7-8; *see* AR3977-83.

A Source Selection Evaluation Board ("SSEB"), empaneled by DLA to evaluate offerors' compliance with the technical requirements, expressed its own skepticism regarding Trident's proposed devices. A September 2020 memorandum from the SSEB sought "additional clarification with concerns to the devices proposed by [Trident] for Production Color and Production B/W," noting "discrepancies with the models proposed." AR7727. After internet research of the proposed models, "[t]he SSEB was unable to find documentation that these devices are currently in production by HP [in accordance with] PWS . . . [§] 21.1.37." *Id.* Due to these concerns, the "SSEB request[ed] [original equipment manufacturer] documentation that the devices proposed for Production Color and B/W [were] currently in production by HP." *Id.* A month later, a second SSEB memorandum reiterated its concerns—this time after "contact with independent HP partners and a HP Technical consultant confirm[ed] that HP does not currently produce devices that operate in the range between 80 and 120 pages per minute." AR7732.

The SSEB's technical evaluations of Trident's proposal reflect these concerns. In October 2020, the SSEB rated Trident as "Unacceptable" with respect to the single manufacturer requirement, noting that "[d]evices for Production Color & B/W currently provided are not actively produced. Verified by HP reseller." AR7738. A November 2020 evaluation changed this rating to "Acceptable" but with an asterisk, accompanied by a note that the SSEB was "requesting documentation to establish requirement of 21.1.37 is being met." AR7768. A February 2021 evaluation removed the asterisk but retained the note. AR8987. In April 2021, the SSEB's final technical evaluation rated Trident's proposal as acceptable on all requirements, removing the note regarding the single manufacturer requirement and qualifying Trident for the award. *See* AR9011-24; AR9016.

As stated by the contracting officer, two intervening events may help explain the changes between evaluations. *See* AR9962-65. First, following the October 2020 "Unacceptable" rating, a member of the SSEB conversed with an HP product manager, who explained HP's special order process in which "HP configures its existing production lines as needed to fill the special orders as they came in." [3] AR9952. According to the product manager, these orders "are primarily used for vendors with very specific needs and are mostly used for government contracts." *Id.* Second, in response to an Evaluation Notice following the November 2020 evaluation, Trident provided a certification letter from the Chief Technology Officer at HP Federal, stating: "HP certifies that the equipment [Trident] proposed . . . are commercial items

---

[3] The existence and contents of this conversation were revealed and added to the administrative record only upon remand during this litigation. *See infra* Part I.B.

currently in production as new equipment as of the date of Trident's final revised proposal submission and will be in production for six months after contract award."[4] AR7851.

With the proposals from both Trident and Xerox deemed technically acceptable, DLA conducted a blind reverse auction between the two offerors in April 2021. *See* AR9029-31. Trident submitted the lowest bid and was selected for the award. *Id.*

### B.   Procedural History

Following an unsuccessful protest at the United States Government Accountability Office, *see* AR9926-35, Xerox filed its claim in this Court on September 3, 2021. *See* Compl., ECF No. 1. Xerox challenges DLA's administration of the reverse auction system and three aspects of the technical evaluation of Trident's proposal. *See id.* ¶ 48. As relevant here, Xerox argues that, in light of the skepticism expressed by the SSEB, the Agency's determination that Trident's proposal complied with the Solicitation's single manufacturer requirement was unreasonable. *See id.* ¶¶ 49-50. The government filed the administrative record on September 24, 2021. *See* ECF No. 29.

On October 7, 2021, Xerox filed its first motion to supplement the administrative record and conduct limited discovery. *See* ECF No. 32. Xerox sought leave to take depositions of two individuals—the Chief Technology Officer of HP and the Chairperson of the SSEB—who have first-hand knowledge of Trident's compliance with the single manufacturer requirement and the Agency's awareness of such compliance. *Id.* at 1. Xerox further sought to supplement the administrative record with "all correspondence between the [DLA Contracting Services Office ("DCSO")] and the SSEB relating to the SSEB's evaluation of Trident's compliance with the Solicitation's single manufacturer requirement[.]" Mem. in Supp. of Pl.'s Mot. at 17, ECF No. 32-1.

Xerox's motion prompted the government to move for a voluntary remand to the Agency, stating that it "learned of an oral communication involving a member of the [SSEB] that is not reflected in the written documentation contained in the administrative record, and of which the contracting officer did not know when he certified the administrative record." *See* Def.'s Unopp. Mot. for Remand at 2, ECF No. 33. The Court granted the unopposed motion and stayed the case for two weeks for remand proceedings. *See* Remand Order, ECF No. 34.

On remand, the contracting officer confirmed the decision to award the contract to Trident after considering the newly discovered information. AR9965. The information consisted of a memorandum from an SSEB member recounting various attempts to confirm Trident's compliance with the single manufacturer requirement, including the aforementioned oral

---

[4] The Evaluation Notice requested clarification only of Trident's compliance with PWS § 21.1.15, not the single manufacture requirement. *See* AR7777.4. As such, the parties dispute whether HP's letter was intended to address the single manufacturer requirement and the extent to which it did or did not. *See* Pl.'s Mem. at 13-14; Def.'s Opp'n to Pl.'s Mot. at 3-4, ECF No. 44.

communication with an HP product manager regarding HP's special order process. AR9951-52; *see supra* Part I.A. Attached to the memorandum were emails between members of the SSEB in which they express the need to confirm such compliance. AR9953-61; *see, e.g.*, AR9957 ("We will definitely have to do the work to make sure we are not getting lied to."). Upon unopposed motion, the government supplemented the administrative record with these documents and the contracting officer's remand decision memorandum. *See* ECF No. 38.

On November 5, 2021, Xerox filed a second motion to supplement the administrative record, renewing and replacing its previous motion. *See* Pl.'s Mem. at 2 n.1. Xerox has dropped its request to conduct depositions and instead renews only its request for "all documents and correspondence between the [SSEB] and the [DCSO] relating to the SSEB's evaluation of Trident's compliance with the Solicitation's single manufacturer requirement." *Id.* at 2-3. The government opposes Xerox's motion. *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 44 [hereinafter Def.'s Opp'n].

## II.    LEGAL STANDARDS

In a bid protest, "the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011) (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349-50 (1997)). For effective judicial review under the Administrative Procedure Act ("APA") standards that govern bid protests, "the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Appendix C of the Rules of the United States Court of Federal Claims ("RCFC") lists "core documents" that may be relevant to a bid protest, including "the agency's evaluations of the protester's, awardee's, or other interested parties' offers, proposals, or other responses to the solicitation, including supporting documentation[.]" RCFC App'x C ¶ 22(n). This list is not exhaustive, as Appendix C requires the government "to produce the core documents *and the remainder of the administrative record*[.]" *Id.* ¶ 23 (emphasis added).

"Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness[.]" *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). The agency-assembled record, however, "is not always a complete record of documentary materials generated during the procurement and maintained contemporaneously with the occurrence of the salient events or actions associated with the procurement[.]" *Pitney Bowes Gov't Sols., Inc. v. United States*, 93 Fed. Cl. 327, 331 (2010). While an agency "exercise[s] some judgment in furnishing the court with relevant documents," *Cubic Applications*, 37 Fed. Cl. at 350, it "does not possess the discretion to makes these records whatever it says they are." *East West, Inc. v. United States*, 100 Fed. Cl. 53, 56 (2011). Allowing the agency to retroactively delineate the scope of review may preclude the "substantial inquiry" and "thorough, probing, in-depth review" the court must perform in reviewing an agency

decision. *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997) (quoting *Overton Park*, 401 U.S. at 415). As such, the presumption of completeness that attaches to the agency-assembled record "can be rebutted with clear evidence" that the agency omitted from the record information that it relied upon in reaching its final decision. *Poplar Point*, 145 Fed. Cl. at 494.

When the contents of the agency-assembled administrative record are questioned, a protester may move to complete the record. *Id.* A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision and were considered by the agency in reaching its decision or generated during the decision-making process. *BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020); *see also Comint Sys.*, 100 Fed. Cl. at 167.

In contrast to a motion to complete, a motion to supplement the administrative record "seeks to add materials that the agency did *not* consider but should be considered to permit a proper evaluation of the agency's decision." *Poplar Point*, 145 Fed. Cl. at 494 (emphasis added). The Federal Circuit has instructed that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quotations omitted).

## III.    DISCUSSION

Xerox's motion, styled as a motion to supplement the administrative record, seeks to add to the record "all documents and correspondence between the [SSEB] and the [DCSO] relating to the SSEB's evaluation of Trident's compliance with the Solicitation's single manufacturer requirement." Pl.'s Mem. at 2-3. Xerox argues that the record, as it stands, "contains significant inconsistencies" with respect to the single manufacturer requirement and "continues to exclude highly relevant documents." *Id.* at 2. According to Xerox, the missing documents will show that "the Agency was aware of and ignored Trident's material non-compliance" with the single manufacturer requirement. *Id.* at 4.

The government opposes the motion on two grounds. Def. Opp'n at 2. First, it argues that Xerox "seeks predecisional intra-agency communications," which "are, as a matter of law, not part of the administrative record." *Id.* Second, it contends that the record is complete with "the rationale for the agency's determination that Trident satisfied the single manufacturer requirement." *Id.*

### A.    Xerox's Motion is Properly Treated as a Motion to Complete the Administrative Record

Because Xerox's motion seeks documents that were generated and considered by the Agency during the decision-making process, the Court treats it as a motion to complete, rather than supplement, the administrative record. Intra-agency emails regarding DLA's evaluation of Trident's proposal fall under the broad instruction that the administrative record contains "the materials that were before the agency when it made its final decision." *See Comint*, 100 Fed. Cl. at 166 (quotations omitted); *see also Cubic Applications*, 37 Fed. Cl. at 342 ("The court's inquiry

is therefore based on an examination of the 'whole record' before the agency; that is, all material that was developed and considered by the agency in makings its decision") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

Though the government argues otherwise, deliberative documents fall within the scope of the administrative record. The concept of the "whole record" focuses on the materials before the *agency*, not those presented to the court. *See Tauri Group, LLC v. United States*, 99 Fed. Cl. 475, 480-81 (2011) ("'[T]he administrative record already in existence' . . . depends on what the agency did in reaching its decision, not what it chooses to assemble after a protest is lodged.") (quoting *Camp*, 411 U.S. at 142). Indeed, the government would have a difficult task explaining how documents covered by the *deliberative process* privilege are not considered "documentation that reveals the agency's *decision-making process*" and thus form part of the administrative record. *See Vanguard*, 99 Fed. Cl. at 92 (emphasis added). The Court, of course, acknowledges and agrees that "internal deliberative materials . . . are generally excluded from the record" that the agency compiles for the purposes of a bid protest. *Comint*, 100 Fed. Cl. at 169. But this does not remove such materials from the realm of the whole record that was before the agency, and thus a request to add them to the record equates to a request to complete the record.

The government contradicts its own stance on this issue through consecutive footnotes in its opposition brief. *See* Def.'s Opp'n at 11-12 nn.2-3. In the first half of its opposition, the government contends that Xerox seeks materials related to "the agency's pre-decisional deliberative process" and that "administrative records do not contain deliberative materials." *Id.* at 7. It uses this position to assert, proactively, in a footnote that no formal claim of privilege is necessary to exclude these materials from the administrative record because they are "not properly part of the administrative record in the first place." *Id.* at 11 n.2 (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). Logically, if the government believes that these types of materials are not part of a complete administrative record, it should agree with Xerox's characterization of its motion as one to supplement the administrative record. The government's next footnote, however, then states that because Xerox seeks documents "considered by the relevant agency decision makers that were not included in the record," such a motion is generally treated as a motion to complete the administrative record. *Id.* at 11 n.3 (quoting *Poplar Point*, 145 Fed. Cl. at 494) (brackets omitted). The government, in essence, thus creates its own self-serving circular logic: because a request for deliberative materials seeks documents that were before agency decision makers, such a request should be treated as a motion to complete the administrative record; and, because deliberative materials are never part of the administrative record, such a motion should be denied.

The Court agrees with the government that a request for deliberative materials should be treated as a motion to complete the administrative record but disagrees that such materials are categorically excluded from the administrative record. Deliberative materials generated during the decision-making process are part of the whole administrative record but may be withheld from the agency-assembled record under the deliberative process privilege.

**B.      Xerox has not Demonstrated that the Record is Incomplete**

Based on the above reasoning, Xerox may sustain its motion to complete the administrative record by demonstrating the existence of documents that were considered by the Agency and improperly omitted from the agency-assembled record. The Court finds that Xerox has not met its burden in this instance.

Xerox does not provide clear evidence of the existence of specific documents that were relied upon by the Agency in reaching its final decision in order to overcome the record's presumption of completeness. Aside from one email referenced in the administrative record, Xerox does not point to any specific document that is missing from the record and instead seeks a broad category of intra-agency emails regarding the single manufacturer requirement, believing that there must be some further explanation for the Agency's decision. *Id.* at 17-18. It appears, however, that the agency-assembled record is replete with documentation regarding the SSEB's evaluation of Trident's compliance with the single manufacturer requirement and the accompanying reasoning. *E.g.*, AR7738, AR7768, AR 8987, AR 9016 (technical evaluations); AR7727, AR7732 (memoranda related to evaluations). In fact, according to Xerox, much of the documentation in the record supports its position that the Agency "had serious concerns over discrepancies in Trident's technical proposal relating to the single-manufacturer requirement." Pl.'s Mem. at 16. Unsatisfied with the Agency's reasoning for dropping its concerns, Xerox speculates that additional reasoning "must be found in the correspondence Xerox is seeking." *Id.* at 18. But Xerox provides no basis for its speculation that would permit the Court to order completion of the record with such a broad class of documents.

The one email that Xerox identifies with specificity—the inclusion of which the government does not oppose and the Court grants—exemplifies why the remainder of Xerox's request fails. *See* Pl.'s Mem. at 17; Def.'s Opp'n at 7 n.1. On voluntary remand, the contracting officer considered a memorandum recounting conversations between an SSEB member and HP affiliates. *See* AR9951-52. Attached to the memorandum were multiple emails within the SSEB, one of which referenced "receiving another email from DCSO." AR9958. This constitutes the "clear evidence" needed to overcome the presumption of completeness. *See Poplar Point*, 145 Fed. Cl. at 494. It contains a reference to a specific document not otherwise found in the administrative record and considered by the Agency in its decision-making process. No such concrete evidence accompanies Xerox's remaining requests for a broad category of documents. The Court does not doubt, and the government does not appear to dispute, that additional intra-agency communications exist. Def. Opp'n at 9-10. But without clear evidence to the contrary, the Court cannot conclude that such documents are properly part of a complete record, especially in light of the existing SSEB evaluations and supporting documentation.

The Court agrees with the government that Xerox seeks deliberative documents and finds that Xerox has not established that such documents were improperly withheld or that the deliberative process privilege should be overcome. This Court has acknowledged that some information "by its very nature would not be found in an agency record," such as evidence of bad

faith or improper conduct. [5] *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343-44 (2004). As with the more general presumption of regularity in government conduct, overcoming the presumption of completeness of the agency-assembled record on grounds that the government acted improperly in compiling it "must rest on a strong evidentiary footing." *See id.* Xerox's argument that the Agency withheld unfavorable documents from the record is essentially such an allegation. Xerox provides no evidentiary basis for its speculation that the Agency intentionally withheld documentation that shows that "the Agency was aware of and ignored Trident's material non-compliance[.]" Pl.'s Mem. at 4. Similarly, Xerox makes no specific allegation that the Agency acted in bad faith in evaluating Trident's proposal, as would ordinarily be required to overcome the deliberative process privilege. *See Comint*, 100 Fed. Cl. at 169. Nor can it be said that Xerox seeks documents that by their nature would not be found in the record, given the extensive documentation already present in the record of the Agency's skepticism of Trident's proposal.

Accordingly, the Court denies Xerox's request for "all documents and correspondence between the [SSEB] and the [DCSO] relating to the SSEB's evaluation of Trident's compliance with the Solicitation's single manufacturer requirement."

## IV.    CONCLUSION

For the reasons stated above, Xerox's motion to complete the administrative record is **GRANTED-IN-PART** and **DENIED-IN-PART**. On or before **December 21, 2021**, the government shall complete the administrative record with the email to the SSEB member from DCSO, referenced in AR9957.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on September 8, 2021. ECF No. 13. Accordingly, the Opinion and Order is filed **UNDER SEAL**. On or before **January 7, 2022**, the parties **SHALL CONFER AND FILE** a joint status report that (i) identifies the information, if any, that the parties contend should be redacted, (ii) explains the basis for each proposed redaction, and (iii) includes an attachment of the proposed redactions for this Opinion.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

---

[5] *Orion* uses this language to explain when it may be appropriate to allow discovery and supplementation of the record with such evidence. *See Orion*, 60 Fed. Cl. at 343-44. The Court finds it equally applicable where, as here, a protester believes that an agency has inappropriately withheld unfavorable documents already in existence.